U.S. DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**FILED**

OCT - 2 2014

IN OPEN COURT
JAMES W. McCORMACK, CLERK
BY: _Melanie Beard_
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:14-CR-197 BRW |
| | ) | |
| STEVEN B. JONES | ) | |
| | ) | |

## INFORMATION

The United States charges that, at all times material to this Information:

## GENERAL ALLEGATIONS

1.     The Arkansas Department of Human Services (ADHS) was an agency of the government of the State of Arkansas.  ADHS was Arkansas' largest state agency, with more than 7,500 employees and a budget of approximately $6.8 billion.  Among other things, ADHS works with a system of community mental health care centers to provide mental health services to adults, juveniles, and children.

2.     In each of the calendar years of 2007, 2008, 2009, 2010, 2011, and 2012 ADHS received over $10,000 in federal funding.

3.     Defendant STEVEN B. JONES was a resident of Crittenden County, Arkansas. JONES was a Deputy Director of ADHS from in or about April 2007 to in or about July 2013. Prior to becoming Deputy Director of ADHS, JONES served in the Arkansas House of Representatives from in or about November 1998 to in or about December 2004.  JONES represented District 54, which included most of Crittenden County.

4.      As a supervisor and employee, JONES was an agent of ADHS, and he was responsible for, among other things, overseeing five of ADHS's ten divisions.  JONES worked directly with the Division Directors in areas that encompass both state and federal programs, including at-risk youth and delinquent youth services facilities.

5.      PERSON A was a resident of Crittenden County, Arkansas.  PERSON A was the Pastor and Superintendent of a church located in West Memphis, Arkansas.

6.      PERSON B was a resident of Crittenden County, Arkansas.  PERSON B was a juvenile probation officer in Crittenden County and city councilmember for West Memphis, Arkansas.  PERSON B was also affiliated with PERSON A's church.

7.      PERSON C was the owner of two mental health companies, COMPANY A and COMPANY B.

8.      COMPANY A provided outpatient mental health services to juveniles.

9.      COMPANY B provided inpatient mental health services to juveniles.

## COUNT ONE
### Conspiracy
### (Violation of 18 U.S.C. § 371)

10.      The introductory allegations set forth in paragraphs 1 through 9 are realleged and incorporated by reference as though fully set forth herein.

### The Conspiracy

11.      Beginning in or about April 2007, and continuing through in or about February 2012, in the Eastern District of Arkansas, and elsewhere, the defendant, STEVEN B. JONES, together with PERSON A, PERSON B, PERSON C, and others known and unknown, did knowingly and unlawfully conspire, confederate, and agree together and with each other:

-2-

a.      to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of $5,000 or more of ADHS, an agency of the State of Arkansas, in violation of 18 U.S.C. § 666(a)(1)(B); and

b.      to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of the State of Arkansas of their right to the honest and faithful services of its public officials, through bribery and the concealment of material information, in violation of 18 U.S.C. §§ 1343 and 1346.

### Objects of the Conspiracy

12.     It was an object of the conspiracy for JONES, PERSON A, PERSON B, PERSON C, and others to enrich themselves and COMPANY A and COMPANY B, and to advance COMPANY A and COMPANY B's business interests, by providing cash payments and other things of value to JONES in exchange for JONES agreeing to take official acts to benefit PERSON C, COMPANY A, and COMPANY B.

13.     It was an object of the conspiracy to hide, conceal, and cover up the nature and scope of JONES' dealings with PERSON A, PERSON B, and PERSON C, including the true source and nature of the payments and other things of value solicited and received by JONES.

### Manner and Means

14.     The conspiracy was carried out through the following manner and means, among others:

a.      JONES solicited and received things of value, including cash payments, from PERSON C.

-3-

b.      PERSON C provided things of value to JONES, through the use of intermediaries, PERSONS A and B.

c.      In return for cash payments and other things of value, JONES agreed to perform official acts that benefitted PERSON C, COMPANY A, and COMPANY B.

d.      JONES, PERSON B, and PERSON C hid, concealed, and covered up their activity and dealings by holding periodic meetings at restaurants in Memphis, Tennessee or rural Arkansas so they would not be easily recognized.  At the meetings, they discussed the business interests of PERSON C, COMPANY A, and COMPANY B, and JONES agreed to take official acts to benefit PERSON C, COMPANY A, and COMPANY B, including providing internal ADHS information to PERSON C.

e.      In general, prior to or during the meetings between JONES, PERSON B and PERSON C, PERSON C would provide PERSON B with checks from companies associated with PERSON C that were made payable to PERSON A's church.  After the restaurant meetings, PERSON B would provide the checks to PERSON A, who typically deposited the checks or caused the checks to be deposited into church-related checking accounts (including an account associated with the church's child development center) and received cash in return—either directly from the church-related accounts or after transferring the money to a personal checking account.  PERSON A would then provide PERSON B with all or part of the cash, and PERSON B would, in turn, provide all or part of the cash payment to JONES during a subsequent, in-person meeting between JONES and PERSON B.

f.      JONES and PERSON C used PERSON B as an intermediary to relay messages, schedule meetings, and deliver bribe payments from PERSON C to JONES.

-4-

g.      JONES, PERSON A, PERSON B, and PERSON C frequently spoke in basic code when talking to each other on the telephone and refrained from using the names of other participants in the conspiracy.

h.      JONES, PERSON A, PERSON B, PERSON C, and others hid, concealed, and covered up their dealings and activity by using bank accounts associated with PERSON A's church to funnel bribe payments to JONES. The transmission of the funds that were paid by PERSON C to JONES, with the assistance of PERSONS A and B, occurred through the use of interstate wire communications.

### Overt Acts

15.     In furtherance of the conspiracy, and to effect its objects and purposes, STEVEN B. JONES, and others, committed the following overt acts, among others, in the Eastern District of Arkansas, and elsewhere:

16.     On or about August 3, 2011, during the following recorded telephone conversation between JONES and PERSON B, JONES provided information to PERSON B regarding reports JONES had received in internal DHS monitoring meetings concerning COMPANY A and COMPANY B:

PERSON B:     Listen, this is what I called you about. Our friend got some concerns about the way some of the referral process is going in Northeast Arkansas. [Competitor company], it's like, everybody is obligated to give them to [competitor company]. I don't know if that's a move that was made by the State or what, but nothing has changed here in Crittenden County, we have a system of how we refer.

JONES:     I know you got that on lock. (laughing)

PERSON B:   Yeah, yeah. [PERSON C] just had some concerns so, when you get home this
            weekend, if you can man, well it's state convocation [for PERSON B's church]
            this weekend, so we probably won't get a chance to touch. But within the next
            two weeks.

JONES:      Yeah, I've actually been, I actually intended to call you a couple of weeks ago.
            Because some stuff, I told you I sit in on the monitor meetings now, because of
            [PERSON C].

PERSON B:   Right.

JONES:      And some stuff came up with [PERSON C] regarding [PERSON C] at
            the last . . . not [PERSON C] personally, regarding [PERSON C's]
            organization which is directed at [PERSON C] and I got the new
            monitoring reports yesterday . . . Monday, and I just haven't read them
            yet, but I was going to say, hell, you might, uh, get back on schedule.

17.     On or about August 3, 2011, during the same recorded telephone conversation,

JONES and PERSON B continued to discuss scheduling a meeting with PERSON C, with

JONES suggesting that they meet in Brinkley, Arkansas "like we did that time". PERSON B

told JONES he would call PERSON C and discuss scheduling the meeting. JONES then agreed

to provide information concerning internal reports about PERSON C and about a referral

program in place at DHS, stating, "I get you up to speed with what's going on, you know, some

of the stuff that's been said [about PERSON C] . . . Just let [PERSON C] know we still trying to

look out on the inside, but I did not know about the referral thing changing. . . . [UI] So, we'll

see if I can find out what's going on with that."

18.     On or about September 11, 2011, JONES, PERSON B, and PERSON C met at a

restaurant in Memphis, Tennessee. PERSON C used a business credit card to pay for the meal,

which cost $189.64.

19.     On or about September 11, 2011, during a recorded telephone conversation after the restaurant meeting, PERSON B called JONES and asked JONES: "Can you roll that information over in your head real quick and let's come back to the table next weekend?" JONES replied, "You know I can."  JONES and PERSON B then had the following exchange:

PERSON B:     Alright.  That's what we need to do.

JONES:          Ok.

PERSON B:     But [PERSON C's] adamant.  [PERSON C] wants to know where you are on it. And, you know, what's the pros and cons?

JONES:          Yeah, let me just, let me just weigh it and make sure that it's cool.  Because I know internally we have lots of discussions when those types of issues come up, so . . . .

PERSON B:     Right.

JONES:          Let me think it through for a minute and I'll get back with you.

PERSON B:     Ok.  Ok.  Alright.  I appreciate you man.

20.     On or about November 23, 2011, during conversation consensually recorded by PERSON B, PERSON B told JONES:  "[L]isten are you going to be in town, 'cause I got that little package I owe you from our last meeting."  After JONES confirmed that he was in town, PERSON B stated, "You in town.  Alright, well I ain't gonna be able to get with you today, but I'm going to catch you before the weekend's out.  I done went up there and blessed the food man.  So, you know I got to bring it to the table."  JONES replied, "You're the man. . . Yeah, you kinda like the Lord, he may not come when you want him, but you right on time."

21.     On or about November 27, 2011, JONES met PERSON B at a restaurant in West Memphis, Arkansas, which was surveilled and consensually recorded.

-7-

22.     On or about November 27, 2011, during the surveilled and consensually recorded meeting at the restaurant in West Memphis, Arkansas, JONES accepted from PERSON B a $1,000 cash payment JONES believed to be bribe money provided by PERSON C related to the September 11, 2011 meeting.

All in violation of Title 18, United States Code, § 371.

## COUNT TWO
### Bribery Concerning Programs Receiving Federal Funds
### (Violation of 18 U.S.C. § 666(a)(1)(B))

23.     Paragraphs 1 through 9 and 15 through 22 are realleged and incorporated by reference as though fully set forth herein.

24.     In each of the calendar years 2009, 2010, and 2011, ADHS received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance.  In addition, JONES' position with ADHS was largely funded by Federal monies.

25.     From in or about August 2009 and continuing until in or about February 2012, in the Eastern District of Arkansas and elsewhere, the defendant, STEVEN B. JONES, a deputy director of ADHS—an agency of the government of the State of Arkansas—did knowingly and corruptly solicit and demand for his own benefit and the benefit of others, and accept and agree to accept, a thing of value from PERSON B and PERSON C—that is, cash payments, meals and beverages—for JONES and others intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of ADHS that involves $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

PATRICK C. HARRIS
First Assistant United States Attorney



_____
PATRICIA S. HARRIS (AR #89208)
ANGELA S. JEGLEY (AR #79100)
Assistant United States Attorneys
Eastern District of Arkansas
Post Office Box 1229
424 W. Capitol Avenue, Suite 500
Little Rock, Arkansas 72203
Tel:  (501) 340-2600
Fax:  (501) 340-2725
Tricia.harris@usdoj.gov
Angela.jegley@usdoj.gov

JACK SMITH
Chief



_____
EDWARD P. SULLIVAN (NY #2731032)
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W., 12th Floor
Washington, D.C. 20530
Tel:  (202) 514-1412
Fax:  (202) 514-3003
E-mail:  edward.sullivan@usdoj.gov